[No. 3208.]

## EDGAR ROSS *v.* THE STATE.

1. BURGLARY—INDICTMENT.—See the opinion *in extenso* for an indictment for burglary *held* sufficient to charge the offense.
2. SAME—DEFINITION OF "ENTRY"—CHARGE OF THE COURT.—In a trial for burglary the trial court charged the jury on the subject of "entry" as follows: "It is not necessary that there should be any actual breaking to constitute the offense of burglary, when the entry is in the night time. An entry into a house in the night time, without the consent of the owner, or some other person authorized to give consent, with intent to commit a theft, is an entry by force, as meant in the law." *Held,* error; that to constitute burglary the entry must be by "force," "threats" or "fraud," whether committed in the day time or night. The definition of *entry* in Article 706 of the Penal Code, which makes it to include, within the meaning of Article 704, every kind of entry but one made with the free consent of the occupant or of one authorized to give such consent, does not eliminate from the offense the element of force, nor dispense with the necessity of alleging and proving an entry by force. But if the entry is at night, the slightest force suffices.

3. Same—Possession of Recently Stolen Property—Burden, of Proof.—The explanation of a defendant when first found in possession of stolen property, if reasonable, imposes upon the State the burden of proving its falsity.

4. Same—Fact Case.—See the statement of the case for evidence *held* insufficient to sustain a conviction for burglary.

Appeal from the District Court of Walker. Tried below before the Hon. J. R. Konnard.

The conviction in this case was for the burglary of the house of J. L. Smith, with the intent to commit theft. A term of two years in the penitentiary was the penalty imposed.

J. L. Smith was the first witness for the State. He identified the defendant on trial as Edgar Ross, the party charged in the indictment. About two years prior to this trial, the witness was operating a steam grist mill at his mill property in the town of Huntsville, and at the same time a kind of junk business, buying old scraps of brass, iron, rags and bones. His mill was near the railroad depot, fronting on a public street in the town of Huntsville, and on the railroad's right of way. On one occasion the witness missed a brass kettle, a brass "bearing," and other articles, including a brass pump, from his mill. These articles belonged to the witness, and were taken without his consent.

J. D. Clarke had a steam mill about three or four hundred yards distant from the witness's mill, and on the opposite side of the depot. He likewise was engaged in buying scrap iron and brass. A short time after the witness missed the articles named, he went to Mr. Clarke's mill and made inquiries about them. Mr. Clarke readily permitted witness to examine his scraps. Among them witness found, in ten or a dozen pieces, about fifty pounds of brass scraps belonging to him. Two or three weeks prior to this, the witness lost the key to his mill, and had another key made, and locked his door every night. When witness began to miss articles, he became satisfied that some person was in the habit of entering his mill at night and removing articles. To ascertain whether or not this was true, he arranged a trap one night, by attaching a string to a tin can, and so placing the can that any one entering the mill by opening the door would throw the can down. On the next morning, the witness found his door locked, but the can thrown down. The witness then had a new lock put on the door, after which he missed no more articles. Witness had a part of the brasses back under a bench on

the sill of the house.   The defendant was very frequently about the witness's mill.   Some time before the can experiment, and very early in the morning, the witness saw the defendant running from the direction of his mill.   The trap experiment described was on or about May 10, 1882.   Meal and corn, as well as brass, was taken from witness's mill before the new lock was put on.   On the morning after the new lock was put on, the witness discovered foot prints about the door, and a place where some party or parties had urinated against the mill.

Cross-examined, the witness said that, at the time of the burglary, his mill was a public place.   It was a common corn mill, operated by steam, in which the witness did grinding for the public.   Witness had no hands to assist him, but did all the work himself.  He was his own fireman, engineer and miller.  He opened his mill at daylight, and closed and locked it about dark.   Except at meal times and when called off by business matters, the witness was always at his mill during the day.   The witness did not think that the articles missed could have been taken in the day time.   He did not know that the defendant entered his mill, nor did he know when the missed articles were taken. They may have been taken three or four days before they were missed.   When witness went to Clarke's mill, he found no one present but Mr. Clarke and his son William.   Mr. Clarke delivered to the witness such articles as he could identify, and witness paid him the price that he had paid for them.   Witness did not remember that, at the time he recovered the stolen goods from Mr. Clarke, he told Clarke he did not know when they were taken, and that they might have been taken at night or during the day while witness was engaged.   At that time, a great many persons came about the witness's mill during the day. The witness did not think that the articles he recovered from Clarke could have been taken out during the day, inasmuch as the witness was satisfied that he would have detected any attempt in the day time, and, besides, they were deposited in a place inconvenient to be reached.

William Clarke was the next witness for the State.   He testified that he remembered the occasion when J. L. Smith came to his father's mill, about two years before this trial, and claimed some articles of brass which witness and his father had previously purchased.   He, Smith, recovered a brass kettle, a brass "bearing," and some other articles.   This brass "bearing" the witness purchased a few days before from the defendant.   This

was the only article identified by the witness Smith which the witness could remember having purchased from the defendant. Witness bought the "bearing" from the defendant two or three days before, about eight o'clock in the morning, together with about twenty pounds more of old iron and brass.

Cross-examined, the witness said that when he made the purchase he asked the defendant where he got the bearing. The defendant said that he found it near the penitentiary. Quite a number of persons besides the defendant were engaged in the sale of scrap iron and brass at the time, and the witness and his father often purchased from them. Witness's father's mill was one of the most public places in the town of Huntsville.

The defendant's father was his first witness. He testified that the defendant was born on the sixteenth day of October, 1869.

J. D. Clarke was the second and the last witness for the defendant. He testified that he was the proprietor of Clarke's mill, near the depot, in the town of Huntsville, Walker county, Texas. He was acquainted with J. L. Smith, and remembered the occasion of Smith's visit to his, witness's, mill, about two years before this trial, in search of scrap brass, which he claimed to have missed from his mill. Among the articles Smith identified and claimed was a brass "bearing." Smith said to the witness that he believed that the party who took the "bearing" either had a key to his mill, and entered and took it at night, or else he took it in the day time, while he, Smith, was at work. Witness's son bought quite a quantity of brass about that time from various parties. Smith at the same time was engaged in the business of buying scrap iron and brass.

S. P. Montgomery was next introduced by the State, in rebuttal. He testified that George Ross, the father of the defendant, lived on his place during the years 1867 and 1868, and that the defendant was born while George Ross lived on that place.

Incorrectness of the charge of the court in various particulars, including that considered in the opinion, and the sufficiency of the evidence to support the conviction, were the grounds assigned for new trial.

*McKinney & Leigh,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

White, Presiding Judge.   This appeal is from a conviction for burglary.   Two grounds were submitted in the motion to quash the indictment: 1. Because the indictment does not allege that the house charged to have been entered was in the county of Walker.   2.   It does not allege that the goods and chattels intended to be stolen (after entry) were in the house alleged to have been entered, nor to whom said goods and chattels belonged.

The indictment filed in said cause is as follows: " In the name, and by the authority of the State of Texas of Texas; the grand jurors in and for Walker county, State of Texas, legally selected, drawn, tried, empaneled, sworn and charged at the May term, A. D. 1882, of the district court of Walker county, State of Texas, upon their oaths, in said court do present that Edgar Ross, in Walker county, State of Texas, on the tenth day of May, A. D. 1882, that is to say in the night time of said tenth of May, A. D. 1882, did by force break and enter the house of J. L. Smith, without the consent of said J. L. Smith, and with the intent to fraudulently take, steal and carry away from the possession of J. L. Smith and out of said house, goods and chattels of the value of five dollars, corporeal personal property belonging to J. L. Smith, without the consent of J. L. Smith, and with the intent to deprive said J. L. Smith, the owner of said goods and chattels, of the value of the same, and to appropriate it to the use and benefit of him, said Edgar Ross; against the peace and dignity of the State."

We think it is apparent that the objections are not well taken. If in Walker county defendant broke and entered the house of J. L. Smith, as is charged, we cannot well see how it was possible for him to do so if the house was not in Walker county. And the same may be said with regard to the allegation respecting the goods and chattels.   It might, perhaps, have been better and more specific to have charged that the goods and chattels were in the house, but we are of opinion that the allegations are substantially sufficient as made, and that the court did not err in overruling the motion to quash.

One of the paragraphs of the charge of the court to the jury which is excepted to is as follows: " It is not necessary that there should be any actual breaking to constitute the offense of burglary, when the entry is in the night time.   An entry into a house in the night time, without the consent of the owner, or

some other person authorized to give consent, with intent to commit a theft, is an entry by force, as meant in the law."

This charge is erroneous. To constitute burglary, the entry must be by "force," "threats," or "fraud," whether committed in the day time or at night. (Penal Code, Art. 704.) This identical question is discussed in *Hamilton* v. *The State,* 11 Texas Court of Appeals, 116, and it was held that the definition of "entry" in Article 706, making it include in its meaning "every kind of entry but one made by the free consent of the occupant or of one authorized to give such consent," did not eliminate from the offense the element of "force," nor dispense with the necessity of alleging and proving an entry by "force." If the entry is at night, the slightest force to effect it will suffice.

We are of opinion that the evidence is not sufficient to support the verdict and judgment. Clarke, the party from whom Smith got the articles alleged to have been stolen from his mill, was only able to identify one of the articles, viz, "a brass bearing," as an article which he had purchased from the defendant. He states that when he purchased that "brass bearing" from the accused, he, Clarke, asked defendant where he had got it, and that defendant stated that he had found it up near the penitentiary. This statement of the defendant, made at the time he was first found in possession of the stolen property, was altogether natural and reasonable, when considered in connection with the other evidence in this case, and it devolved upon the State to show that it was false. (*Garcia* v. *The State,* 26 Texas, 209; *Galloway* v. *The State,* 41 Texas, 289; *Johnson* v. *The State,* 12 Texas Ct. App., 385.) This the evidence adduced by the State wholly fails to do.

For the errors indicated, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Opinion delivered June 14, 1884.